DECISION AND JOURNAL ENTRY
Defendant David E. Feathers has appealed his conviction from the Summit County Common Pleas Court. This Court affirms.
 I.
On December 8, 1998, Defendant was arrested for felonious assault, a violation of R.C. 2903.11(A)(2); failure to comply with order or signal of police officer, a violation of R.C. 2921.331(B)(2) and (3); vandalism, a violation of R.C. 2909.05(B)(1)(a) and (2); resisting arrest, a violation of R.C. 2921.33(A); driving under the influence of alcohol, a violation of R.C. 4511.19(A)(1); operation without a valid license, a violation of R.C. 4507.02(A); weaving, a violation of R.C.4511.25; and attempted aggravated vehicular assault, a violation of R.C.2903.08 and 2923.02. Defendant entered a plea of not guilty, and the case went to trial. On September 30, 1999, the jury found Defendant guilty on all counts, with the exception of the count for felonious assault. Defendant timely appealed, asserting two assignments of error.[1]
 II. A. Assignment of Error Number One
 The trial court erred in allowing (sic) impeachment of [Defendant's] expert witness on the basis of prior arrests without convictions.
In his first assignment of error, Defendant has asserted that the trial court erred in allowing the State to impeach his expert, Mr. Schultz, through the use of prior arrests. Essentially, Defendant has argued that the State failed to demonstrate any reasonable basis or good faith belief that such a bias existed. This Court disagrees.
As a preliminary matter, the admission or exclusion of evidence is a matter committed to the sound discretion of the trial court. State v.Kinley (1995), 72 Ohio St.3d 491, 497. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Citations omitted.) Statev. Bresson (1990), 51 Ohio St.3d 123, 129.
Evid.R. 607(A) allows any party to impeach the credibility of a witness. Pursuant to Evid.R. 607(B), the party seeking to impeach the witness may ask a question on cross-examination if he has a good faith belief that a factual predicate for the question exists. State v.Gillard (1988), 40 Ohio St.3d 226, paragraph two of the syllabus, overruled on other grounds (1997), 80 Ohio St.3d 390. Moreover, Evid.R. 616(A) states that a party may impeach a witness through extrinsic evidence of bias or prejudice.
The record in the case at bar reveals that the State's inquiry consisted of asking Mr. Schultz whether or not his arrests were true. The State asked Mr. Schultz whether it was true that he was terminated from the Summit County Sheriff's Department, arrested for receiving stolen property and arrested for driving under the influence of alcohol. Defendant has argued that such questions were prejudicial and that the State failed to demonstrate a good faith belief that Mr. Schultz was biased. On the contrary, the State has asserted that it had a good faith belief that the information was true and that such information demonstrated that Mr. Schultz was biased or prejudiced against those in law enforcement.[2] After reviewing the evidence, this Court concludes that the trial court did not abuse its discretion by permitting the State to question Mr. Schultz about his prior arrests. It is not unreasonable for the trial court to allow the State to impeach Mr. Schultz through bias. Accordingly, Defendant's first assignment of error is overruled.
 B. Assignment of Error Number Two
 [Defendant's] conviction for vandalism and attempted aggravated vehicular assault were against the manifest weight of the evidence.
In his second assignment of error, Defendant has argued that his conviction for vandalism and attempted aggravated vehicular assault were against the manifest weight of the evidence. Specifically, Defendant has asserted that the jury would have found him not guilty if the alleged prejudicial evidence of his expert's prior arrests had been excluded.[3]
This Court disagrees.
To determine whether a conviction is against the manifest weight of the evidence this Court:
 must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. A new trial is warranted only in the exceptional case where the evidence weighs heavily in favor of the defendant. Id.
R.C. 2903.08(A) provides that "[n]o person, while operating or participating in the operation of a motor vehicle * * * shall cause serious physical harm to another person or another's unborn." Further, R.C. 2923.02(A) states that "[n]o person, purposely or knowingly, * * * shall engage in conduct that, if successful, would constitute or result in the offense."
R.C. 2909.05(B) provides, in pertinent part:
 (1) No person shall knowingly cause physical harm to property that is owned or possessed by another, when either of the following applies:
 (a) The property is used by its owner or possessor in the owner's or possessor's profession, business, trade, or occupation, and the value of the property or the amount of physical harm involved is five hundred dollars or more[.]
* * *
 (2) No person shall knowingly cause serious physical harm to property that is owned, leased, or controlled by a governmental entity. A governmental entity includes, but is not limited to, the state or a political subdivision of the state, a school district, the board of trustees of a public library or public university, or any other body corporate and politic responsible for governmental activities only in geographical areas smaller than that of the state.
At trial, Streetsboro police officer Darrin Powers testified that he first noticed Defendant's vehicle weaving on State Route 14 in Portage County. He began following Defendant and suspected that Defendant was driving under the influence of alcohol. When Officer Powers activated his overhead lights, Defendant accelerated his vehicle. Officer Powers followed Defendant to the City of Hudson and radioed for assistance. At the intersection of Woodacre and Lascala Drive, he saw Defendant's vehicle collide with a Hudson police cruiser. At the time of the collision, Officer Powers estimated that Defendant was traveling at a speed of forty-five or fifty miles per hour. He recalled that the Hudson police cruiser had its lights on and was parked in both lanes. However, Officer Powers recalled that there was enough room for a vehicle to drive around the Hudson cruiser. He did not see Defendant take any evasive action to avoid the collision. Officer Powers also stated that he was able to stop his police cruiser in time to avoid the accident.
Next, Hudson police officer Troy Wilcox testified that he had heard the police dispatch and knew the identity of the driver from his past involvement with Defendant. Officer Wilcox knew that Defendant would travel to his father's house on Edgeview Drive. Officer Wilcox proceeded in the direction of Edgeview Drive, but became disoriented in the neighborhood. At the intersection of Woodacre and Lascala Drive, he saw a vehicle rapidly approaching down the hill towards his police cruiser. With seconds to spare, Officer Wilcox put his cruiser in park, jumped out, and rolled away from his cruiser. Officer Wilcox testified that he left his door open when he exited the cruiser because he only had time to put the cruiser in park and unbuckle his seat belt. He did not see Defendant's vehicle hit his cruiser, and did not hear any screeching brakes or skidding tires. Instead, Officer Wilcox testified that he heard Defendant's "engine racing," which suggested to him that Defendant was accelerating or going very fast at the time of the collision. The crash left Officer Wilcox's cruiser inoperable. Officer Wilcox testified that his cruiser was worth approximately $22,000. Lastly, the collision launched Officer Wilcox's cell phone and coffee cup from the cruiser.
This Court notes that the essential dispute in this case was whether Officer Wilcox or Defendant caused the accident. At trial the parties debated whether a half moon-shaped mark found on the road near a resident's mailbox was part of the accident. Dr. David Uhrich, an expert in reconstructing traffic accidents, testified on behalf of the State. After reviewing the physical evidence of the accident, Dr. Uhrich stated that the Hudson cruiser was stationary at the time of the collision. Dr. Uhrich calculated that, based upon where Defendant first observed the Hudson cruiser, Defendant had adequate time to stop his vehicle. He further concluded that the collision occurred when Defendant's left front wheel struck the front bumper of the Hudson cruiser. Dr. Uhrich did not detect any offset skid marks. When Defendant's attorney questioned the State's expert about the half moon-shaped mark, Dr. Uhrich testified that the mark was not from the accident. Instead, Dr. Uhrich stated the mark was from the daily treading of the mailman. His observation was consistent with the police report.
On the other hand, Dr. Gerald Schultz, an expert in reconstructing traffic accidents, was Defendant's sole witness. Dr. Schultz testified that the Hudson cruiser was in motion at the time of the accident and collided into Defendant's vehicle. He further stated that the cruiser pushed Defendant's vehicle sideways, which was evidenced by the half-moon shaped skid mark.
Upon reviewing the evidence, this Court concludes that this is not an exceptional case in which the weight of the evidence warrants a new trial. Although there were inconsistencies in the expert testimony presented at trial, this Court will not overturn a judgment based solely on the fact that the jury preferred one version of the testimony over the other. State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, at 4. Additionally, the evaluation of the weight to be given to the evidence and evaluation of the credibility of the witnesses are functions primarily reserved for the trier of the fact. The jury heard several witnesses and saw numerous photographs of the accident. This Court concludes that the jury did not lose its way in finding Defendant guilty of vandalism and attempted aggravated vehicular assault. Indeed, this is not a case where the evidence weighs heavily in Defendant's favor. Defendant's second assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ BETH WHITMORE
FOR THE COURT, BATCHELDER, P. J., CARR, J. CONCUR.
[1] This Court notes that Defendant has only challenged his conviction for attempted aggravated vehicular assault and vandalism. Consequently, this Court will not address the remaining convictions.
[2] The record indicates that the State had extrinsic evidence of Mr. Schultz's termination from the Summit County Sheriff's Department and his prior arrests.
[3] In the first assignment of error, this Court determined that the trial court did not abuse its discretion when it allowed the State to question Defendant's expert about his prior arrests. Even assuming such evidence should have been excluded, the jury's verdict was not against the manifest weight of the evidence.